UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BARBIE BALLARD,

Plaintiff,

Hon. Robert J. Jonker

v.

Case No. 1:25-cv-00687

COMMISSIONER OF
SOCIAL SECURITY,

Defendant.
_______________________________/

**REPORT AND RECOMMENDATION**

This is an action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to review a final decision of the Commissioner of Social Security denying Plaintiff's claim for Disability Insurance Benefits (DIB) under Title II of the Social Security Act. Section 405(g) limits the Court to a review of the administrative record and provides that if the Commissioner's decision is supported by substantial evidence, it shall be conclusive. Pursuant to 28 U.S.C. § 636(b)(1)(B), authorizing United States Magistrate Judges to submit proposed findings of fact and recommendations for disposition of Social Security appeals, the undersigned recommends that the Commissioner's decision be vacated and this matter remanded for further administrative action pursuant to sentence four of 42 U.S.C. § 405(g).

## STANDARD OF REVIEW

The Court's jurisdiction is limited to a review of the Commissioner's decision and of the record made in the administrative hearing process. *Tucker v. Commissioner of Social Security*, 775 Fed. Appx. 220, 225 (6th Cir. June 10, 2019). The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal standards in making her decision and whether there exists in the record substantial evidence supporting that decision. *Id.* at 224-25. Substantial evidence is more than a scintilla, but less than a preponderance, and constitutes such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Livingston v. Commissioner of Social Security*, 776 Fed. Appx. 897, 898 (6th Cir. June 19, 2019).

The Court may not conduct a de novo review of the case, resolve evidentiary conflicts, or decide questions of credibility. *Biestek v. Commissioner of Social Security*, 880 F.3d 778, 783 (6th Cir. 2017). The substantial-evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial interference. *Moruzzi v. Commissioner of Social Security*, 759 Fed. Appx. 396, 402 (6th Cir. Dec. 21, 2018). This standard affords the administrative decision maker considerable latitude and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision. *Luukkonen v. Commissioner of Social Security*, 653 Fed. Appx. 393, 398 (6th Cir. June 22, 2016).

## BACKGROUND

Plaintiff was 50 years of age on her date last insured. (ECF No. 5, PageID.39). She successfully completed high school and worked previously as a cashier and floor manager. (ECF No. 5, PageID.50). Plaintiff applied for DIB benefits on December 15, 2022, alleging that she had been disabled since July 15, 2020, due to blind or low vision, arthritis, back injury, muscle/bone pain, cage around spine, back surgeries, daily migraines, nausea, and memory loss. (ECF No. 5, PageID.36, 39, 293).

Plaintiff's application was denied initially and again on reconsideration, after which time she requested a hearing before an Administrative Law Judge (ALJ). Following an administrative hearing, ALJ Romona Scales entered a partially favorable written decision on February 24, 2025, determining that Plaintiff did not qualify for disability benefits until June 23, 2024, the date she became disabled. (ECF No. 5, PageID.52). The Appeals Council declined to review the ALJ's determination, rendering it the Commissioner's final decision in the matter. Pursuant to 42 U.S.C. § 405(g), Plaintiff now seeks review of the Commissioner's decision that she was not disabled within the meaning of the Act before June 23, 2024.

Plaintiff's insured status expired on December 31, 2024. (ECF No. 5, PageID.39); *see also*, 42 U.S.C. § 423(c)(1). Accordingly, to be eligible for Disability Insurance Benefits under Title II of the Social Security Act, Plaintiff must establish

that he became disabled prior to the expiration of his insured status. *See* 42 U.S.C. § 423; *Moon v. Sullivan*, 923 F.2d 1175, 1182 (6th Cir. 1990).

The social security regulations articulate a five-step sequential process for evaluating disability. *See* 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f). If the Commissioner can make a dispositive finding at any point in the review, no further finding is required. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). The regulations also provide that if a claimant suffers from a non-exertional impairment as well as an exertional impairment, both are considered in determining his residual functional capacity. *See* 20 C.F.R. §§ 404.1545, 416.945.

Plaintiff bears the burden to demonstrate she is entitled to disability benefits and she satisfies her burden by demonstrating that her impairments are so severe that she is unable to perform her previous work, and cannot, considering her age, education, and work experience, perform any other substantial gainful employment existing in significant numbers in the national economy. *See* 42 U.S.C. § 423(d)(2)(A). While the burden of proof shifts to the Commissioner at step five of the sequential evaluation process, Plaintiff bears the burden of proof through step four of the procedure, the point at which her residual functioning capacity (RFC) is determined. *O'Neal v. Commissioner of Social Security*, 799 Fed. Appx. 313, 315 (6th Cir., Jan. 7, 2020).

The ALJ determined that Plaintiff suffers from thoracic degenerative disc disease with residuals from multiple surgeries, thoracic spinal osteoarthritis, residuals from a lumbar fusion, lumbar degenerative disc disease, right knee

osteoarthritis, failed back syndrome and migraine headaches, severe impairments that whether considered alone or in combination with other impairments, failed to satisfy the requirements of any impairment identified in the Listing of Impairments detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1. (ECF No. 5, PageID.39).

With respect to Plaintiff's residual functional capacity, the ALJ determined that Plaintiff, through her date last insured, retained the ability to perform sedentary work subject to the following limitations: (1) lift and/or carry 20 pounds occasionally and 10 pounds frequently; (2) stand and/or walk 4 hours in an 8- hour workday and sit 6 hours in an 8-hour workday; (3) occasionally push and pull with her upper and lower extremities; (4) cannot climb ladders, ropes, or scaffolds, but can occasionally climb ramps and stairs and crouch, and crawl; (4) cannot be exposed to highly exposed places and moving mechanical parts and vibration; (5) requires work free of fast paced production and quota, meaning no tandem work assignments and machine regulated work or hourly production requirements. (ECF No. 5, PageID.44).

The ALJ found that Plaintiff was unable to perform her past relevant work at which point the burden of proof shifted to the Commissioner to establish by substantial evidence that, prior to June 23, 2024, there existed in the national economy a significant number of specific jobs which Plaintiff could perform, her limitations notwithstanding. *O'Neal*, 799 Fed. Appx. at 316. In satisfying this burden, the ALJ may rely on a vocational expert's testimony. *Id.*

In this case, a vocational expert testified that there existed approximately 70,000 jobs in the national economy which an individual with Plaintiff's RFC could

perform. (PageID.41). This represents a significant number of jobs. *See, e.g., Taskila v. Commissioner of Social Security*, 819 F.3d 902, 905 (6th Cir. 2016) ("[s]ix thousand jobs in the United States fits comfortably within what this court and others have deemed 'significant'"). Accordingly, the ALJ concluded that Plaintiff was not entitled to benefits prior to June 23, 2024.

## ANALYSIS

Plaintiff argues, *inter alia*, that the ALJ erred by heavily relying on Plaintiff's intermittent reports of temporary pain relief from her spinal cord stimulator (SCS), which eventually failed and was removed, in crafting her RFC. (ECF No. 9, PageID.3453-56). The undersigned agrees.

A claimant's RFC is an assessment of "the most [a claimant] can still do despite [her] limitations." 20 C.F.R. § 416.945(a)(1) (2012). A claimant's RFC assessment must be based on all the relevant evidence in his or her case file. *Id.* The governing regulations describe five different categories of evidence: (1) objective medical evidence, (2) medical opinions, (3) other medical evidence, (4) evidence from nonmedical sources, and (5) prior administrative medical findings. 20 C.F.R. §§ 404.1513(a)(1)-(5); 416.913(a)(1)-(5). When evaluating medical opinions, an ALJ is not required to "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative finding(s) including those from [the claimant's] medical sources." 20 C.F.R. §§ 404.1520c(a); 416.920c(a). Instead, an ALJ must use the following factors when considering medical opinions:

(1) "[s]upportability"; (2) "[c]onsistency"; (3) "[r]elationship with the claimant"; (4) "[s]pecialization"; and (5) other factors, such as "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of [the SSA's] disability program's policies and evidentiary requirements." §§ 404.1520c(c)(1)-(5); 416.920c(c)(1)-(5). Although there are five factors, supportability and consistency are the most important, and the ALJ must explain how they were considered. §§ 404.1520c(b)(2); 416.920c(b)(2). And although an ALJ may discuss how he or she evaluated the other factors, he or she is not generally required to do so. *Id.* If, however, an ALJ "find[s] that two or more medical opinions . . . about the same issue are both equally well-supported . . . and consistent with the record . . . but are not exactly the same, [the ALJ must] articulate how [he or she] considered the other most persuasive factors . . . ." §§ 404.1520c(b)(3); 416.920c(b)(3).

The ALJ discounted the opinions of Alejandra Solis, PA-C; Laura Frey, M.D.; and the agency medical consultants because, *inter alia*, Plaintiff reported that she received 50% pain relief from her SCS. (ECF No. 5, PageID.48-49). The ALJ also concluded the following:

> In sum, although the claimant's impairments are severe, they do not preclude her from completing basic work-related activities. The claimant's residual functional capacity as outlined above is supported by the objective findings, the hearing testimony, the claimant's admissions, the claimant working after the alleged onset date, examination findings, her admission her pain was reduced by 50% with the SCS, in part, the opinions of the State agency medical consultants, and the other factors discussed above.

(ECF No. 5, PageID.49).

The ALJ's characterization of this objective medical evidence was incorrect. In May 2022, Plaintiff underwent an SCS (ECF No. 5-1, PageID.1379-82), but the surgeon was only able to place one of two leads, and it was in a "suboptimal location." (ECF No. 5-1, PageID.1364). Later that month at her follow-up appointment, Plaintiff reported 40% pain relief from the trial and that the best relief was the second day after implantation but that she had been unable to "recapture the relief" from that day since then. (ECF No. 5-1, PageID.1366). Upon examination, Plaintiff was "[p]ositive for joint pain, back pain and muscle pain." (ECF No. 5-1, PageID.1371). On February 6, 2023, Plaintiff underwent a second SCS trial because the initial one did not meet the required threshold of 50% relief to implant a permanent SCS. (ECF No. 5-3, PageID.2385-87). After the second trial, Plaintiff experienced greater than 50% pain relief. (ECF No. 5-3, PageID.2386, 2436). Notably, three days after the trial, Plaintiff rated her pain at a "four or five" compared to a previous "eight or nine." (ECF No. 5-3, PageID.2436). On February 13, 2023, Plaintiff underwent a permanent spinal cord stimulator battery placement. (ECF No. 5-3, PageID.2360, 2370). Two weeks post-permanent implant, Plaintiff had "significant improvement of her thoracic pain" with "[n]o numbness, tingling, or weakness." (ECF No. 5-3, PageID.2424).

In late March 2023, Plaintiff reported that the SCS afforded her "good relief from pain" but that, since the implantation, her feet would become cold and tingly, causing her to lose her balance. (ECF No. 5-3, PageID.2418-19). Upon

examination, Plaintiff had no spinal tenderness. (ECF No. 5-3, PageID.2420). A provider advised Plaintiff to turn the SCS off for a week then contact the device representative if her symptoms returned at that time. (ECF No. 5-3, PageID.2419). In early May 2023, a provider noted that Plaintiff "[r]eport[ed] that her recent SCS holiday went well. While it was off, she did not experience any symptoms in her legs, symptoms resolved. Has since turned it back on and notices the same symptoms as before, although less frequent and less intense." (ECF No. 5-3, PageID.2417).

By late June 2023, Plaintiff reported that she was "[u]nable to get any relief when [the SCS was] adjusted," that her legs were "still going numb and tingling," and that she was "ready to have [the SCS] removed" because it was "not working appropriately." (ECF No. 5-3, PageID.2409). Plaintiff's provider noted that the previous week-long reset "seemed to help but now [she is] having the same issues again." (*Id.*). The device representative advised Plaintiff to turn off the SCS for two weeks because her symptoms returned but "improved last time with holiday." (*Id.*). Upon examination, Plaintiff's gait was "slightly antalgic." (ECF No. 5-3, PageID.2408). Less than a week later, Plaintiff reported that "the stimulator may [have been] helping" because her symptoms "increased since turning the stimulator off." (ECF No. 5-4, PageID.2476). Upon examination, Plaintiff's gait was still "slightly antalgic." (ECF No. 5-4, PageID.2477).

In August 2023, Plaintiff reported that "ha[d] an issue with falls ever since her back surgeries" (ECF No. 5-4, PageID.2619), but she had no back tenderness

upon examination (ECF No. 5-4, PageID.2622). In October 2023, Plaintiff underwent x-ray imaging of her thoracic spine because of her "increased back pain" and to ensure that her SCS had not migrated, but her stimulators were "in place." (ECF No. 5-4, PageID.2637-38). In November 2023, Plaintiff reported that her back pain, described "as a 'tingly' sensation" was "not well-controlled." (ECF No. 5-4, PageID.2593). Upon examination, Plaintiff was "[p]ositive for arthralgias, back pain, joint swelling and myalgias." (ECF No. 5-4, PageID.2596). In December 2023, Plaintiff was seen for "worsening thoracic back pain," at which she reported that she could not perform activities of daily life "without significant back pain" and that "her back hurt[ ] after holding half the clothes in a laundry basket." (ECF No. 5-4, PageID.2564). Plaintiff's examination was again "[p]ositive for arthralgias, back pain, joint swelling and myalgias." (ECF No. 5-4, PageID.2566).

In March 2024, Plaintiff reported that she had "been falling frequently and that her balance ha[d] been worsening" with "intermittent tingling" in her lower extremities, but she reported that "her stimulator continue[d] to work well and provide[d] coverage of the thoracic bra strap region" with no change in the stimulation coverage of that area. (ECF No. 5-4, PageID.2640-41). Upon examination, the provider noted "impair[ed] spinal musculature proximal" to her battery site. (ECF No. 5-4, PageID.2641). By August 2024, Plaintiff reported that the stimulator provided "no relief" (ECF No. 5-5, PageID.3163), and her examination noted tenderness to palpation of her lumbar and thoracic spine. (ECF No. 5-5, PageID.3164). In October 2024, Plaintiff's provider noted that the SCS failed, that

Plaintiff had not used the SCS "in some time," and that the SCS was "causing more pain in [her] back, legs, [and] abdomen once it is used." (ECF No. 5-5, PageID.3279). Plaintiff's SCS was then removed in November 2024. (ECF No. 5-5, PageID.3286).

The ALJ's selective and repeated citation to the record that Plaintiff's SCS provided her with 50% relief is not representative of Plaintiff's functioning over time. Although Plaintiff experienced relief after her second trial and permanent SCS implantation, it was transient and intermittent, with the record showing that her back pain generally worsened as she experienced issues of numbness and tingling in her lower extremities, causing falls. (ECF No. 5-3, PageID.2409; ECF No. 5-4, PageID.2564, 2593, 2637-38; ECF No. 5-5, PageID.3163). Rather than consider this worsening trajectory in the record, the ALJ appears to have overly focused on Plaintiff's short-lived pain relief from a trial period, which is a mischaracterization of the medical evidence.

Because social security cases are so heavily fact-dependent, the undersigned acknowledges that a single record might support an adverse decision in another case. Here, however, it does not. The Court also recognizes that the ALJ is not required to directly address every piece of evidence and finding in the record. *See Smith-Johnson v. Comm'r of Soc. Sec.*, 579 F. App'x 426, 437 n.11 (6th Cir. 2014). Nevertheless, an ALJ's mischaracterization of the record typically requires remand. *See, e.g.*, *Johnson v. Comm'r of Soc. Sec.*, No. 2:16-cv-172, 2016 WL 7208783, at *4 (S.D. Ohio Dec. 13, 2016) ("This Court has not hesitated to remand cases where the ALJ engaged in a very selective review of the record and significantly

mischaracterized the treatment notes."); *Dalton v. Comm'r of Soc. Sec.*, No. 2:20-CV-3636, 2021 WL 2430939, at *11 (S.D. Ohio June 15, 2021), *report and recommendation adopted*, 2021 WL 2853442 (S.D. Ohio July 8, 2021) (remanding due to factual inaccuracies in ALJ's characterization of treating source's notes). Given the ALJ's mischaracterization and the extent to which she relied on this evidence in discounting several opinions and crafting her RFC assessment, the ALJ's RFC is not supported by substantial evidence. Accordingly, the undersigned recommends remanding for a comprehensive re-evaluation of Plaintiff's RFC in light of the complete medical record.

Because the undersigned recommends remand on the above issue, the undersigned declines to address Plaintiff's remaining issues and instead instructs the ALJ to address all of the alleged errors on remand.

## CONCLUSION

For the reasons stated herein, the undersigned recommends that the Commissioner's decision be vacated and this matter remanded for further administrative action pursuant to sentence four of 42 U.S.C. § 405(g).

OBJECTIONS to this report and recommendation must be filed with the Clerk of Court within fourteen days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within such time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

Respectfully submitted,

Date: July 16, 2026

/s/ Phillip J. Green
PHILLIP J. GREEN
United States Magistrate Judge